IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DR. JILL STEIN, ANITA RIOS, LOGAN MARTINEZ, DEBORAH MANERA SMITH and ROBERT HANNON,<br><br>    Plaintiffs,<br><br>    v.<br><br>FRANK LaROSE, in his official capacity as Secretary of State of Ohio,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No.: 2:24-cv-04042 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

  Plaintiffs Dr. Jill Stein, Anita Rios, Logan Martinez, Deborah Manera Smith and Robert Hannon (collectively, "Plaintiffs") respectfully request that the Court grant them preliminary injunctive relief as necessary to enjoin the ongoing violation of their First and Fourteenth Amendment rights, and to prohibit the Ohio Secretary of State, Defendant Frank LaRose ("the Secretary"), from imminently committing further violations of their rights by treating as void and failing to count valid votes cast for Stein and Rios as ballot-qualified Independent candidates for President and Vice-President respectively in Ohio's November 5, 2024 general election.

  All parties concede that Stein and Rios timely complied with all requirements to appear on the ballot in Ohio's rapidly approaching general election, which is now less than one month away. The Secretary confirmed this fact in a press release issued on August 23, 2024.[1] Indeed, Ohio has

---

[1] *See* Ohio Secretary of State Media Center, *Secretary LaRose Confirms Statewide Candidates Qualified to Appear on November 5, 2024 General Election Ballot*, August 23, 2024, *available at* https://www.ohiosos.gov/media-center/press-releases/2024/2024-08-23/ (accessed October 8, 2024).

already printed ballots with Stein's and Rios's names included among the candidates for President and Vice-President.  Yet on September 19, 2024 the Secretary notified Stein and Rios that votes cast for them would be void and not counted.  Why?  Unbeknownst to Rios – and without her authorization – a Green Party of Ohio member sent a letter to the Secretary mistakenly advising that Rios desired to withdraw her name as a candidate.

Since then, Rios has provided the Secretary with a sworn affidavit attesting that she did not know about or authorize the letter requesting her withdrawal as a candidate.  The Secretary apparently accepts the truth of that affidavit, but rather than disregarding the August 28, 2024 letter mistakenly requesting Rios's withdrawal, the Secretary's office has indicated that it may refer the matter to a prosecutor – *while insisting that the mistaken withdrawal request must be honored*.  But if the Secretary acknowledges that the withdrawal request was not authorized, there is no basis for the Secretary to honor it.

Furthermore, by waiting more than three weeks after receiving the mistaken request – until September 19, 2024 – to notify Plaintiffs that votes cast for Stein and Rios would be void and not counted, the Secretary invites confusion and the inevitable disenfranchisement not only of Plaintiffs, who will be denied the right to vote for their preferred candidates, but also of countless other Ohio voters who will cast their votes for the ballot-qualified Stein-Rios ticket, unaware that the Secretary will treat those votes as void.  The Secretary cannot assert any legitimate or compelling state interest that could justify such harms.  On the contrary, the injuries the Secretary will inflict are wholly unnecessary, and eminently avoidable, because the Secretary could simply treat Stein and Rios the same as all other ballot-qualified candidates by crediting and counting the votes cast for them.

Plaintiffs are therefore entitled to the preliminary relief requested here. Plaintiffs respectfully request that the Court enter an order prohibiting the Secretary from treating votes cast for the Stein-Rios ticket as void and from failing to count such votes. Plaintiffs further request that the Court enter an order prohibiting the Secretary from notifying any board of elections that votes cast for the Stein-Rios ticket will be void and not counted. As set forth below, Plaintiffs easily satisfy all factors the Court must consider in determining whether to grant such relief.

## FACTUAL BACKGROUND

The relevant facts are set forth in Plaintiffs' Verified Complaint for Declaratory and Emergency Injunctive Relief (ECF No. 1), which Plaintiffs incorporate herein by reference.

## LEGAL STANDARD

To determine whether a temporary restraining order ("TRO") should issue, the Court must consider the same factors that determine whether a preliminary injunction is warranted. *See Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent [the requested relief]; (3) whether granting the [requested relief] would cause substantial harm to others; and (4) whether the public interest would be served by granting the [requested relief]. *Id.; Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991).

## ARGUMENT

**I.    The Court Should Grant Preliminary Relief Because All Relevant Factors Weigh Decisively in Plaintiffs' Favor.**

There is a strong likelihood that Plaintiffs will prevail on the merits in this action because the Secretary is severely burdening Plaintiffs' First and Fourteenth Amendment rights by treating votes cast for the Stein-Rios ticket as void and refusing to count them, and no compelling or legitimate state interest can justify such unequal treatment. On the contrary, the Secretary has actual notice that Rios did not know about or authorize the letter of withdrawal mistakenly submitted on her behalf, and so he can – and should – simply disregard it. The First Amendment demands nothing less. Instead, the Secretary insists upon disenfranchising not only Plaintiffs, but also countless Ohio voters who all but certainly will cast votes for the Stein-Rios ticket, unaware of the Secretary's last-minute announcement that such votes will be treated as void and not counted. In the absence of judicial intervention, therefore, Plaintiffs and a substantial but indeterminate number of Ohio voters will suffer irreparable harm to their First Amendment speech, associational and voting rights. By contrast, neither the Secretary nor anyone else will be harmed by a Court order that merely requires the Secretary to credit as valid and count votes cast for candidates who duly qualified to appear on Ohio's general election ballot. Finally, the requested relief serves the public interest because it vindicates Ohio voters' rights and ensures the orderly administration of the impending general election, which will otherwise be disrupted by the Secretary's needless refusal to credit and count votes cast for ballot-qualified candidates. All factors thus weigh decisively in favor of granting Plaintiffs the requested relief.

**A. Plaintiffs Have a Strong Likelihood of Success on the Merits.**

There is a strong likelihood that Plaintiffs will prevail on the merits on two independently sufficient grounds. First, the Secretary's unequal treatment of votes cast for the Stein-Rios ticket cannot withstand *Anderson-Burdick* scrutiny and is therefore unconstitutional. Second, the First

4

Amendment requires the Secretary to make a reasonable determination of the facts relied upon to deny Plaintiffs' speech, associational and voting rights, and the Secretary plainly failed to do so.

> 1. **The Secretary's Treatment of Votes Cast for the Stein-Rios Ticket as Void Cannot Survive *Anderson-Burdick* Scrutiny.**

Plaintiffs' claims that the Secretary's unequal treatment of votes cast for the Stein-Rios ticket violates their First and Fourteenth Amendment rights are analyzed under the familiar *Anderson-Burdick* framework. *See Graveline v. Benson*, 992 F.3d 524, 534 (6th Cir. 2021) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)). Under that framework, a reviewing court must:

> weigh the "character and magnitude of the asserted injury" to plaintiffs' constitutional rights against the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson,* 460 U.S. at 789. The appropriate balance is determined by the magnitude of the burden. If the burden is severe, the regulation will be upheld only if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick,* 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If the regulations are minimally burdensome, the state's regulatory interests will likely justify "reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788. Many regulations fall somewhere between these two extremes. When a regulation imposes an intermediate burden, "courts engage in a flexible analysis, weighing the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 546 (6th Cir. 2014).

*Graveline*, 992 F.3d at 534-35. Here, the Secretary's enforcement of O.R.C. §§ 3513.257, 3513.30(E) and 3513.31(F) is severely burdensome – it will disenfranchise Plaintiffs, their supporters, and countless more Ohio voters – and thus compels strict scrutiny, which it cannot withstand. But even if the Court finds the burden on Plaintiffs' rights to be intermediate or even minimal, the provisions are still unconstitutional as applied because they serve no legitimate state interest whatsoever.

> a. **The Burdens Imposed on Plaintiffs' First and Fourteenth Amendment Rights Are Severe.**

5

The Ohio laws challenged here "place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). "Both of these rights … rank among our most precious freedoms." *Id.* And here, as in *Williams*, no extended discussion is needed to establish that the Secretary's enforcement of the challenged laws impose severe and unequal burdens on these rights. "The right to [associate] for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes." *Id.* at 31. That is no less true here, where the Secretary has not blocked Plaintiffs from the ballot but has just as certainly denied them an opportunity to win votes – *even though there is no dispute that Stein and Rios are duly qualified candidates*.

Further, the Secretary has notified or imminently will notify all county boards of election that votes cast for the Stein-Rios ticket will be void and not counted, and the county boards will notify voters prior to and on election day at polling locations. As a result, the Secretary has functionally terminated the Stein-Rios candidacy. Voters are exceedingly unlikely to cast their votes for Stein and Rios if they know those votes will be void and not counted. That is a severe burden on Plaintiffs' speech and associational rights.

The Secretary's decision also severely burdens Plaintiffs' voting rights. Plaintiffs' preferred candidates – Stein and Rios – have duly qualified to appear on Ohio's November 5, 2024 general election ballot, and they do in fact appear on that ballot, but if Plaintiffs vote for them, their votes will be void and not counted. Plaintiffs will be forced either to forego the opportunity to vote for the presidential ticket of their choice, or to be disenfranchised. Here, no less than *Williams*, Plaintiffs' right to vote is "heavily burdened" because they cannot vote for their preferred

candidates – even though, once again, there is no dispute that those candidates qualified for the ballot. *See Williams*, 393 U.S. at 31.

The Secretary's unequal treatment of votes cast for the Stein-Rios ticket will also violate Plaintiffs' right to equal protection. Stein and Rios duly qualified to appear on Ohio's November 5, 2024 general election ballot. They do in fact appear on that ballot. Yet the Secretary insists that votes cast for them must be treated as void and not counted. Further, the Secretary has severely disadvantaged the Stein-Rios ticket, relative to other qualified candidacies, by announcing that votes cast for the Stein-Rios ticket will be void and not counted. Such unequal treatment of votes cannot be reconciled with long-settled Supreme Court precedent.

The Supreme Court has "consistently recognized that all qualified voters have a constitutionally protected right to cast their ballots and have them counted…." *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (citations and quotation marks omitted). Although *Gray* involved vote dilution in Congressional elections, the principle applies with equal force here, in the context of a presidential election where the Secretary intends not to count valid votes cast for ballot-qualified candidates. As the Court explained:

> Every voter's vote is entitled to be counted once. It must be correctly counted and reported. As stated in *United States v. Mosley,* 238 U.S. 383, 386, 'the right to have one's vote counted' has the same dignity as 'the right to put a ballot in a box.'

*Gray*, 372 U.S. at 380.

Furthermore, "[i]n decision after decision, this Court has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (citations omitted). Although "[t]his equal right to vote is not absolute … as a general matter, before that right to vote can be

7

restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny." *Id.* (citations, quotation marks and brackets omitted).

### b. The Secretary's Unequal Treatment of Votes Case for the Stein-Rios Ticket Serves No Legitimate, Much Less Compelling State Interest.

Even if the Court found the Secretary's enforcement of O.R.C. §§ 3513.257, 3513.30(E) and 3513.31(F) imposed a less than severe burden – either intermediate or even minimal – the statutes could not survive *Anderson-Burdick* scrutiny as applied here because they serve no state interest whatsoever. The Secretary acknowledges that Stein and Rios qualified to appear on Ohio's November 5, 2024 general election ballot, and that they are in fact included on those ballots. Further, the Secretary has actual notice that Rios did not withdraw her candidacy. *Gray*, *Dunn* and the long line of precedent on which they rely squarely foreclose any possibility that Ohio has a legitimate interest in failing to count votes cast for such candidates.

### 2. The Secretary Violated the Secretary's Duty to Make a Reasonable Determination of the Facts Relied Upon to Deny Plaintiffs' First Amendment Rights.

In cases where a governmental decisionmaker is vested with authority to take action that infringes upon First Amendment rights, the Supreme Court has recognized that "the decisionmaker [must] reach its conclusion … in good faith, rather than as a pretext; but it does not follow that good faith is sufficient." *Waters v. Churchill*, 511 U.S. 661, 677 (1994) (plurality). Instead, a governmental decisionmaker also must be able to establish that the facts relied upon to penalize or deny First Amendment rights are what the decisionmaker "*reasonably* found them to be." *Id.* (emphasis original). "[T]he possibility of inadvertently punishing someone for exercising her First Amendment rights makes such care necessary." *Id.* at 678.

*Waters* involved the question whether a governmental employee's speech could, consistent with the First Amendment, serve as the basis for disciplining or discharging the employee. *See id.*

8

at 664. In this case, where the First Amendment rights at issue "rank among our most precious freedoms," *Williams*, 393 U.S. at 30, the standard applicable to the Secretary's factfinding must be at least as exacting. And in *Waters*, the Court observed that "it may be unreasonable for [a governmental decisionmaker] to act based on extremely weak evidence when strong evidence is clearly available…." *Waters*, 511 U.S. at 677. That is precisely what the Secretary has done here.

The Secretary has actual notice that Rios did not know about or authorize any attempt to withdraw her candidacy. The Secretary has nonetheless relied on an unauthorized, mistaken attempt at withdrawal as the sole basis for effectuating Rios's actual withdrawal – notwithstanding the Secretary's possession of Rios's sworn affidavit stating that she does not and never has requested her withdrawal. The Secretary is relying on extremely weak evidence and disregarding the strongest possible evidence of Rios's intent – her sworn statement to that effect. The First Amendment forbids such arbitrary procedures. *See id.* at 678 (concluding that "procedures outside the range of what a reasonable [decisionmaker] would use may be condemned as unreasonable.").

**B. Plaintiffs Will Suffer Irreparable Harm Absent the Requested Relief.**

There can be little doubt that Plaintiffs will suffer irreparable harm if the Court does not grant the requested relief. The Secretary has effectively terminated the Stein-Rios candidacy, notwithstanding the undisputed fact that these candidates duly qualified to appear on Ohio's November 5, 2024 general election ballot. Unless this Court intervenes, Stein and Rios cannot speak in Ohio as ballot-qualified candidates, they cannot campaign for voters' support as ballot-qualified candidates, and most critically, they cannot win votes and have them counted – all of which is core First Amendment protected conduct. *See Williams*, 393 U.S. at 30-31. So too, the voter-Plaintiffs will be denied the right to vote for their preferred candidates – or if they do, they will be disenfranchised – even though those candidates are ballot-qualified. *See id.* Such

9

infringement of Plaintiffs' fundamental First Amendment rights unquestionably constitutes irreparable injury. *See Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C. Granting the Requested Relief Will Not Harm Anyone.

It is equally clear that granting the requested relief not only will not "cause substantial harm to others" – it will not harm anyone at all. *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1009. Stein and Rios are already on Ohio's general election ballots. They will not be removed. And the relief requested here – that the Secretary be prohibited from treating votes cast for the Stein-Rios ticket as void and not counting them – is precisely what the Secretary was planning to do when he publicly announced that Stein and Rios were ballot-qualified. Neither the Secretary nor any other party can assert a harm that will arise if votes cast for duly qualified candidates are credited and counted on an equal basis with all other valid votes.

### D. The Public Interest Will Be Served by Granting the Requested Relief.

Finally, it is equally clear that the public interest will be served by granting the requested relief. "[T]he public interest weighs in favor of allowing registered voters to vote freely." *Summit County Democratic Party v. Blackwell*, 388 F.3d 547, 555 (6th Cir. 2004); *see also Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1012 ("There is a strong public interest in allowing every registered voter to vote."). There is also "a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the middle of the submission of absentee ballots." *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1012

(citation omitted).  Here, the Secretary notified Plaintiffs that votes cast for the Stein-Rios ticket would be void and not counted on September 19, 2024 – more than three weeks after the Secretary received the mistaken withdrawal request and just one day before the Secretary publicly announced that the general election was "officially underway" with military and overseas voting already begun.  The Secretary's inexplicable delay will undoubtedly "result in voter confusion" as those ballots still include the Stein-Rios ticket among the ballot-qualified choices in the presidential election.  *Northeast Ohio Coalition for the Homeless*, 467 F.3d at 1012 (citation omitted).  The Secretary's belated and gratuitous decision to treat votes cast for the Stein-Rios ticket as void and not to count them thus "needlessly creates disorder in electoral processes, without any concomitant benefit to the public."  *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. Further, the Court should enter an order prohibiting the Secretary from treating votes cast for the Stein-Rios ticket as void and failing to count them, and prohibiting the Secretary from notifying any county board of election that the Secretary intends to do so.

Dated: October 9, 2024

Respectfully submitted,

/s/Mark R. Brown
Mark R. Brown (KBA # 08295)*
Newton D. Baker/Baker &
Hostetler Professor of Law
Capital University**
303 E. Broad Street
Columbus, OH 43220
MBrown@law.capital.edu
Phone (614) 236-6590

Oliver Hall
(*Pro Hac Vice Pending*)
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
Phone (202) 248-9294
oliverhall@competitivedemocracy.org

*Counsel to Plaintiffs*
*Counsel of record
**For identification only

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2024 the foregoing document was filed using the Court's CM/ECF system and served upon Defendant Frank LaRose by email to the Ohio Attorney General's Office, c/o Julie Pfeiffer, Section Chief, Constitutional Offices, at Julie.Pfeiffer@OhioAGO.gov.  I also certify that Ms. Pfeiffer agreed to accept such service on Defendant's behalf.

                                            */s/Mark R. Brown*
                                            Mark. R. Brown
                                            *Counsel to Plaintiffs*