IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DR. JILL STEIN, ANITA RIOS, LOGAN MARTINEZ, DEBORAH MANERA SMITH and ROBERT HANNON, <br><br> Plaintiffs, <br><br> v. <br><br> FRANK LaROSE, in his official capacity as Secretary of State of Ohio, <br><br> Defendant. | Civil No.: No. 24-cv-4042 <br> Judge Michael Watson |

## PLAINTIFFS' SUPPLEMENTAL BRIEF

Pursuant to the Court's order at the October 16, 2024 status conference, Plaintiffs Dr. Jill Stein, Anita Rios, Logan Martinez, Deborah Manera Smith and Robert Hannon (collectively, "Plaintiffs") respectfully submit this Supplemental Brief to address the possible application of *Pullman* abstention to this case and the authority of the Court to enter emergency preliminary relief in the unlikely event that it determines abstention is warranted. *See Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941).

### Introduction

*Pullman* abstention is unwarranted in this case. *Pullman* abstention "is appropriate only where state law is unclear *and* a clarification of that law would preclude the need to adjudicate the federal question." *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (emphasis original). Neither requirement is satisfied here.

As a threshold matter, "[t]he doctrine of abstention … is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it. *Jones v.*

*Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (citations and brackets omitted). That is due to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The Court's duty to exercise jurisdiction is especially pressing where, as here, plaintiffs assert First Amendment claims, because "In such cases to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Coleman*, 848 F.3d at 749 (quoting *Zwickler v. Koota*, 389 U.S. 241, 252 (1967)).

Plaintiffs filed this action and requested emergency preliminary relief to enjoin the Defendant, Ohio Secretary of State Frank LaRose ("the Secretary"), from violating their First Amendment rights by failing to count votes cast for Plaintiffs Stein and Rios in the November 5, 2024 general election, and by publicly announcing his intention to do so. It is doubtful that the Secretary has authority under Ohio law to take such actions. But even if the Secretary did, it would not preclude the need to adjudicate Plaintiffs' claims that the Secretary's failure to count votes cast for the Stein-Rios ticket violates their First and Fourteenth Amendment rights. Consequently, there is no basis for invoking *Pullman* abstention here. *See Hunter*, 635 F.3d at 233.

As explained in more detail below, the Secretary's position raises two state-law issues, one under O.R.C. 3513.30(D) that cannot plausibly support *Pullman* abstention, and another under O.R.C. 3513.257 and O.R.C. 3513.30(E) that likewise does not support *Pullman* abstention.

First, O.R.C. 3513.30(D). In order to prevail, Defendant must prove not only that Anita Rios signed and authorized the August 28, 2024 letter delivered to the Secretary of State, but also that the letter effected a formal withdrawal under O.R.C. 3513.30(D). She can do neither. The facts overwhelming establish that Rios did not sign and did not authorize delivery of the letter. More

2

importantly, Section 3513.30(D)'s terms plainly require that to have effect a withdrawal letter must in writing expressly provide that the candidate does not want her name printed on the ballot. *See State ex rel. Renner v. Athens County Board of Elections*, 2024-Ohio-356 (Feb. 1, 2024). The Secretary ignored this legal requirement in concluding that Rios had withdrawn. The August 28 letter, after all, said nothing about not printing Rios's name on ballots.

Because O.R.C. 3513.30(D)'s terms are not ambiguous *Pullman* abstention is not proper under this issue. Further, the factual issue of whether Rios signed and authorized the letter is equally relevant to the First and Fourteenth Amendment arguments Plaintiffs raise in this case, since Defendant's action cannot survive First Amendment scrutiny if Rios did not formally request to withdraw. This Court stands in as good a position to resolve that factual issue as any state court.

Next, O.R.C. 3513.257 as read in conjunction with O.R.C. 3513.30(E). In order to prevail, Defendant must prove that Ohio law authorized his refusal to count votes for Stein. As explained below, it is far from clear that either of these statutes authorize that relief. Even if there is some ambiguity in this particular issue, *Pullman* abstention is still not warranted because of the tertiary nature of the issue. It can be avoided by either of two antecedent conclusions: (1) a decision that Rios did not sign and authorize the letter, or (2) that Defendant acted constitutionally unreasonably in disregarding O.R.C. 3513.30(D)'s plain terms. The First Amendment requires a reasonable investigation and reasonable conclusion, after all, and ignoring a controlling state statute (O.R.C. 3513.30(D)) when rejecting First Amendment protections satisfies neither requirement. The First Amendment's *Anderson*/*Burdick* analysis, moreover, requires at bare minimum that a legitimate state interest support Ohio's action, something Defendant cannot establish by violating Ohio's laws and policies. Ohio law makes plain that it has no interest in refusing to count votes based on a letter that does not satisfy the statutory withdrawal requirements in O.R.C. 3513.30(D).

3

Consequently, *Pullman* abstention is a poor vehicle for resolving the case under a subsidiary ssue like that presented by O.R.C. 3513.30(E) and O.R.C. 3513.257.

Finally, because *Pullman* abstention is especially disfavored in First Amendment cases, the Sixth Circuit has made clear that when invoked it should be accompanied with the preliminary relief needed to preserve First Amendment rights during any pending state-court litigation. *See Coleman*, 848 F.3d at 752.  Should this Court choose *Pullman* abstention, therefore, it should also preliminarily enjoin Defendant's refusal to count Stein's votes.

## Argument

### I. Pullman Abstention Is Not Favored in First Amendment Cases and Should Not Be Invoked Unless the Court Also Grants Preliminary Relief.

*Pullman* abstention is only proper when the federal "question [is] susceptible to being mooted or narrowed by a definitive ruling on [unclear] state law issues." *United States v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001). "In order to invoke *Pullman* abstention, a district court must ask whether the state statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question....'" *Jones v. Coleman*, 848 F.3d 744, 752 (6th Cir. 2017). In *City of Houston v. Hill*, 482 U.S. 451 (1987), for example, the Supreme Court refused to invoke *Pullman* and ask state courts to interpret a Houston ordinance that made it a crime "to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id*. at 461. "This ordinance," the Court offered, "is not susceptible to a limiting construction because, as both courts below agreed, its language is plain and its meaning unambiguous." *Id*. at 468. An avoidance of First Amendment issues must be all but certain before *Pullman* can properly be invoked. *See Ohioans Against Corp. Bailouts v. LaRose*, 414 F. Supp.3d 1058, 1064 n.3 (S.D. Ohio 2019). Where First Amendment issues will remain nonetheless, abstention is inappropriate. *Id*.

4

The Sixth Circuit has "echo[ed] the Supreme Court's strong aversion to the invocation of *Pullman* abstention when a state statute is being challenged on First Amendment grounds and when that statute is not obviously susceptible to a limiting construction." *Coleman*, 848 F.3d at 753. The reason is simple; abstention allows "alleged chilling effects" to continue, thus further compromising First Amendment rights. *Id*. at 747. As the Supreme Court stated in *Hill*, 482, U.S. at 467-68, "we have held that 'abstention ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression.' In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.'" (Quoting *Dombrowski v. Pfister,* 380 U.S. 479, 489–490 (1965); *Zwickler*, 389 U.S. at 252).

Because of this, "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains." *Coleman*, 848 F.3d at 754. Otherwise, an "abstention order … [will] effectively shut the federal courthouse door upon plaintiffs in their search for timely vindication of their federal constitutional claims.'" *Id*. (quoting *Daniel v. Waters*, 515 F.2d 485, 492 (6th Cir. 1975)). Should the Court here decide to invoke *Pullman* abstention, it accordingly should also grant Plaintiffs preliminary relief that is necessary to remedy the Secretary's violation of their First Amendment rights and those of thousands of Ohio voters who will otherwise be disenfranchised.

Due to the impropriety of invoking *Pullman* in First Amendment challenges, the *Coleman* court concluded that the district court improperly abstained in a case alleging that a Tennessee campaign finance statute "unconstitutionally burdens the rights of free speech and association." *Coleman*, 848 F.3d at 747. Abstention is even more inappropriate here, where Plaintiffs challenge the Secretary's unilateral interpretation of State laws that he claims allow him to cancel the duly

5

cast votes for a presidential candidate. Even if the Secretary's interpretation of Ohio law were correct – and it is not – his action in canceling Stein's votes violates the First Amendment. *Pullman* abstention is not proper under these circumstances, and at bare minimum should be accompanied with preliminary emergency relief should it be invoked.

## II. The Adjudication of Plaintiffs' Claims Does Not Require Clarification of Any Ohio Law.

There are only two possible grounds for invoking *Pullman* abstention here, and neither one has merit.

First, O.R.C. 3513.30(D) requires that candidates' formal withdrawals (1) be in writing, (2) "announce" their withdrawals, and (3) "request that [their names] not be printed on the ballot." The Supreme Court of Ohio made clear in *State ex rel. Renner v. Athens County Board of Elections*, 2024-Ohio-356 (Feb. 1, 2024), that these three requirements are mandatory for a candidate's withdrawal to be effective. In that case, the Relator had attempted to withdraw her candidacy so that she could file corrected paperwork. She "filed a document ('the withdrawal letter') with the board on December 18, asking it to '[p]lease withdraw [her] petitions filed on 12/15/23 for County Commissioner.'" *Renner*, 2024-Ohio-356 at ¶ 5. She argued that "her withdrawal letter constituted a valid method for withdrawing her candidacy, [because] the statute does not mandate the use of any particular language for withdrawing as a candidate and … there apparently is no form for doing so." *Id*. at ¶ 30. She also "invoke[d] Secretary of State Directive 2023-34, Section 14.07, which provides that 'a withdrawal of candidacy must be made in writing and filed with the election officials with whom the declaration of candidacy * * * was filed.' … [T]his directive contains no specific directions concerning what must be in the 'writing' to effectuate a withdrawal of candidacy." *Id*.

The Ohio Supreme Court rejected these claims, observing that "R.C. 3513.30(D) provides that the 'withdrawal may be effected by the filing of a written statement by such candidate announcing the candidate's withdrawal and requesting that the candidate's name not be printed on the ballots,'" *id*. at ¶ 32, and that "[h]ere, the withdrawal letter that [Relator] filed with the board did not announce the withdrawal of her candidacy and did not request that her name not be printed on the ballots." *Id*. "In failing to meet these requirements," the Court ruled, "it follows that [Relator] has not shown that she 'effected' a valid withdrawal of her candidacy under R.C. 3513.30(B)." *Id*.

*Renner*'s ruling is clear. For a withdrawal to be effective under O.R.C. 3513.30(D) it must be in writing and both announce the candidate's withdrawal and "request[] that the candidate's name not be printed on the ballots." The August 28, 2024 letter in this case did not state in writing that a "request" was being made that Rios's "name not be printed on the ballots." It says nothing at all about printing or ballots; instead, the letter states a "request that my name be removed from any relevant documents and replaced with Dr. Butch Ware, the officially nominated Vice Presidential candidate." On its face, the letter accordingly could not have effected a valid withdrawal even if Rios had signed it (which she did not) or the Stein campaign had authorized it (which it did not).

Given this glaring facial defect and failure to follow the requirements of O.R.C. 3513.30(D), the Secretary could not have reasonably concluded that a legitimate withdrawal had occurred under Ohio law. The Secretary's conclusion to the contrary was constitutionally unreasonable within the meaning of the First Amendment, since even a cursory comparison of the letter with the statutory requirements and the Ohio Supreme Court's ruling in *Renner* would have revealed that the letter was not compliant with Ohio law. It could have no effect.

7

Because the meaning of O.R.C. 3513.30(D) and the Ohio Supreme Court's ruling are plain, this state-law issue presents an inappropriate vehicle for *Pullman* abstention. *Pullman* abstention, after all, is predicated on an ambiguity in state law. No ambiguity exists here. Instead, the Secretary's failure to follow state law is clear, and that failure proves a First Amendment violation. The Secretary could not reasonably, within the meaning of the First Amendment, conclude that Rios had withdrawn. Further, the Secretary can point to no legitimate state interest that supports his action. Ohio's understandable policy – lest there be accidental or unauthorized withdrawals – is that a formal and proper statement of withdrawal that includes a request by the candidate not to have her name printed on the ballot be delivered to the Secretary. The Secretary's acceptance of, and use of, a facially defective request contradicts that policy. No legitimate state interest supports the Secretary's action. Immediate injunctive relief under the First Amendment is accordingly proper.

The other possible ground for invoking *Pullman* abstention relates to the Secretary's authority to refuse to count votes for Dr. Jill Stein, who never asked to withdraw, have her name removed from the ballot, or not have her votes counted. The Secretary of State relies upon O.R.C. 3513.31 and O.R.C. 3513.257 for this authority. Neither statute, however, supplies it.

> Section 3513.257 states;
>
> Persons desiring to become independent joint candidates for the offices of president and vice-president of the United States shall file, not later than four p.m. of the ninetieth day before the day of the general election at which the president and vice-president are to be elected, one statement of candidacy and one nominating petition for the two of them. The prospective independent joint candidates' statement of candidacy shall be filed with the nominating petition as one instrument.

It further requires that presidential petitions include "a slate of presidential electors sufficient in number to satisfy the requirement of the United States Constitution." O.R.C. 3513.257. It is

8

undisputed here that the Stein/Rios campaign satisfied all of these requirements when they filed their independent papers with the Secretary of State.

Unlike a gubernatorial petition, which according to O.R.C. 3513.257(C) cannot be accepted for initial filing "unless it also shows the joint candidacy of a person who desires to be an independent candidate for the office of lieutenant governor," the filing of presidential papers are not further restricted by O.R.C. 3513.257. Put another way, while gubernatorial submissions must reflect a "joint candidacy," presidential campaigns need not. Presidential filings need only include both candidates in "one statement" in "one instrument," they need not constitute a "joint candidacy." *See* O.R.C. 3513.257(C). Section 3513.257 does not speak to the consequences that follow withdrawal of one candidate to a "joint candidacy" (which is not required of presidential tickets) or those two candidates who file in "one instrument" (which applies to presidential tickets).

It is Section 3513.30(E), which is also relied upon by the Secretary in his September 19, 2024 letter announcing that Stein's votes will not be counted, that speaks to the consequences of withdrawal. But it does not authorize removing one candidate's name from the ballot based on the actions of a running mate. It states in relevant part that "[w]hen a person withdraws under division (B) or (D) of this section after the seventieth day before the day of the primary election or the general election [which the letter in this case purported to do], the board of elections shall not remove the name of the *withdrawn candidate* from the ballots." (Emphasis added). Section 3513.30(E) thus only speaks to consequences for the "withdrawn candidate" in the singular sense, and says nothing about consequences for a running mate.

Section 3513.30(E) continues that "[t]he board of elections shall post a notice at each polling place on the day of the election, and shall enclose with each absent voter's ballot given or mailed after the candidate withdraws, a notice that votes for the *withdrawn candidate* will be void

9

and will not be counted. If the name is not removed from all ballots before the day of the election, the votes for the *withdrawn candidate* are void and shall not be counted." (Emphasis added). Again, the consequences are reserved for the "withdrawn candidate" and do not apply to a running mate.

Section 3513.30(E) consequently does not authorize the Secretary's refusal to count votes for Stein, who obviously never withdrew. Even if Rios properly did (and she did not), under the plain terms of the statute votes could only be voided as to her as the "withdrawn candidate." Therefore, even if Section 3513.257 is read in conjunction with Section 3513.30(E), it does not authorize the Secretary to rely on one candidate's withdrawal as the basis for failing to count votes for the candidate's running mate. This issue does not support *Pullman* abstention.

*Pullman* abstention is also unwarranted due to the subsidiary nature of this issue. It can be avoided by either of two antecedent conclusions: (1) that Rios did not sign and authorize the letter, or (2) that the Secretary acted constitutionally unreasonably in disregarding O.R.C. 3513.30(D)'s plain terms. The First Amendment requires a reasonable investigation and reasonable conclusion, after all, and ignoring a controlling state statute when rejecting First Amendment protections satisfies neither requirement. The First Amendment's *Anderson/Burdick* analysis, moreover, requires at bare minimum that a legitimate state interest support Ohio's action, something the Secretary cannot establish by violating Ohio's laws and policies. *See Crawford v. Marion Cty. Election Bd.,* 553 U.S. 181, 191 (2008). Consequently, *Pullman* abstention is a poor vehicle for resolving this issue and this case.

*Pullman* abstention is especially disfavored here because of the underlying First Amendment and voting-right stakes at issue. This is doubly true given the Supreme Court's recent holding in *Trump v. Anderson*, 601 U.S. 100, 115-16 (2024), that "in the context of a Presidential

10

election, state-imposed restrictions implicate a uniquely important national interest." (Citation omitted and cleaned up). The Court there warned against the "'patchwork' that would likely result from state enforcement" of restrictions on presidential candidates because these "would 'sever the direct link that the Framers found so critical between the National Government and the people of the United States' as a whole." *Id*. at 116 (citation omitted). "[I]n a Presidential election," it added, "'the impact of the votes cast in each State is affected by the votes cast'—or, in this case, the votes not allowed to be cast—'for the various candidates in other States.'" *Id*. (citations omitted). "An evolving electoral map could dramatically change the behavior of voters, parties, and States across the country, in different ways and at different times. The disruption would be all the more acute— and could nullify the votes of millions and change the election result …." *Id*. at 116-17.

The Secretary's refusal to count presidential votes in Ohio threatens to disrupt the whole of America's vote for President. Indeed, it could conceivably "change the election result." Even if Ohio law is ambiguous, this Court should accordingly follow the Sixth Circuit's advice and enter preliminary relief protecting voters' First and Fourteenth Amendment rights in this presidential election.

## **Conclusion**

For the foregoing reasons, the Court should not invoke *Pullman* abstention. Should the Court do so, it also should grant Plaintiffs the requested preliminary relief to protect their First Amendment rights during the pendency of any state court proceeding.

11

Dated: October 18, 2024  Respectfully submitted,

/s/Mark R. Brown
Mark R. Brown (Bar No. 081941)*
Newton D. Baker/Baker &
Hostetler Professor of Law
CAPITAL UNIVERSITY**
303 E. Broad Street
Columbus, OH  43215
MBrown@law.capital.edu
Phone  (614) 236-6590

Oliver Hall
(*Pro Hac Vice Pending*)
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org

*Counsel of Record
**For identification only

*Counsel to Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2024, the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Mark R. Brown
Mark. R. Brown