UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dr. Jill Stein, *et al.*,

    Plaintiffs,

v.

Frank LaRose, in his official capacity as Secretary of State,

    Defendant.

Case No. 2:24-cv-4042

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Before this Court is a motion to stay a stay. ECF No. 21. Plaintiffs also request a preliminary injunction pending appeal. *Id.* In its October 23 Order,[1] the Court applied the *Pullman* doctrine to abstain and stay the case, anticipating a mandamus action in Ohio state courts. The Court concluded that whether the August 28 letter effected a "withdrawal" of Anita Rios's candidacy remains an open question under Ohio law (as does whether Ohio law permits a candidate to withdraw their withdrawal). Resolving those questions would substantially modify (if not moot) the federal constitutional question raised by Plaintiffs' claims because *Anderson-Burdick* analysis requires the Court to define the State interest. Here, the State interest in not counting votes for candidates who withdrew would be substantially greater than the state interest in not counting votes for candidates who did not withdraw. Given that the November 5 election

---

[1] The October 23 Order will be followed up with a supporting Opinion.

is less than two weeks away and over 700,000 ballots have been cast by voters on notice that votes for the Stein/Rios ticket will not be counted,[2] the *Purcell* principle bolstered the Court's decision to abstain.

## I. STANDARD OF REVIEW

When considering a motion for stay pending appeal, the Court considers "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). These factors are not each prerequisites to a stay pending appeal but are "interconnected considerations" to be balanced by the reviewing court. *Id.* This standard is the same as the familiar standard courts apply in considering whether to grant a preliminary injunction. *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020). The Court thus also applies this standard to Plaintiffs' motion for a preliminary injunction pending appeal.

---

[2] The time-sensitive nature of this case also influenced the Court's decision to abstain in lieu of certifying the state question to the Ohio Supreme Court. It typically takes the Ohio Supreme Court a significant amount of time to decide whether to accept a certified question, risking that certification would take too long. And there is always a risk that the Ohio Supreme Court will decline to answer a certified question. Thus, although certification is typically preferable to abstention, this particular case warranted, in this Court's view, abstention so Plaintiffs could seek an emergency order in state court.

## II. DISCUSSION

### A. The Court Did Not Err in Abstaining and Entering a Stay.

Plaintiffs are unlikely to prevail on their appeal of the abstention and stay Order. The Sixth Circuit has set out a two-prong test for whether *Pullman* abstention is appropriate: courts must ask whether the resolution of (1) an unsettled question of state law (2) might moot or alter Plaintiffs' federal constitutional claims. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983) (citation omitted). As the Court declared in its last Order, both prongs are met here. Plaintiffs dispute both prongs, but none of their arguments disturb the Court's conclusions that (1) whether Defendant properly applied Ohio's candidate withdrawal law is an unsettled question of state law, and (2) the resolution of that unsettled issue would substantially alter (if not moot) Plaintiffs' federal constitutional claims.

#### 1. Whether Defendant correctly applied Ohio's candidate-withdrawal law remains an unsettled question of Ohio law.

Plaintiffs contend that Defendant violated the unambiguous terms of Ohio Revised Code § 3513.30(D). Under that statute, a candidate may withdraw "by the filing of a written statement by such candidate announcing the candidate's withdrawal and requesting that the candidate's name not be printed on the ballots." Defendant received such a letter from Philena Farley, the Co-Chair of the Ohio Green Party, bearing Anita Rios's signature and purporting to withdraw Ms. Rios's candidacy. This letter was insufficient, Plaintiffs assert, because it

lacks certain magic words required under Ohio law and because Ms. Farley lacked authority to submit it. Both assertions reveal unsettled issues of state law.

### a. Ohio law does not unambiguously require magic words to withdraw as a candidate under O.R.C. § 3513.30(D).

In support of their magic-words argument, Plaintiffs cite *State ex rel. Renner v. Athens County Bd. of Elections*, 2024-Ohio-356 (Feb. 1, 2024). In *Renner*, the Ohio Supreme Court found that a letter purporting to withdraw a candidate's "petitions" does not effect a withdrawal of her candidacy. The court observed that:

> The withdrawal letter that [the candidate] filed with the board did not announce the withdrawal of her candidacy and did not request that her name not be printed on the ballots. In failing to meet these requirements, it follows that [the candidate] has not shown that she "effected" a valid withdrawal of her candidacy[.]

*Id.* at *2. Plaintiffs take this to mean that withdrawal letters must contain magic words like "I withdraw my candidacy and request my name be removed from the ballot."

The Court is not sure that *Renner* supports Plaintiffs' magic-word standard (another ambiguous point of Ohio law). But, even if *Renner* does set such a standard, the letter Ms. Farley submitted may well contain the requisite magic words. The letter states, "I, Anita Rios, hereby withdraw my name as placeholder candidate for Vice President of the United States . . . . I request that my name be removed from any relevant documents[.]" Ex. F, ECF No. 16-1 at PAGEID # 145. On Plaintiffs view, 'I request that my name be removed from any relevant

documents' is not sufficiently similar to "I request my name be removed from the ballot" to make the letter a valid withdrawal under Ohio law. Perhaps Plaintiffs are right, but, at best, Ohio law is ambiguous on this point. So, all Plaintiffs' magic-words argument accomplishes is pointing out multiple ambiguities in Ohio law.

### b. Ohio law may permit Defendant to treat the letter Ms. Farley submitted as a withdrawal of Ms. Rios's candidacy.

Assuming the August 28 letter contained language capable of withdrawing Anita Rios's candidacy, the next question is whether Defendant violated Ohio law by accepting the letter and treating it as a withdrawal. Defendant violated Ohio law by doing so, according to Plaintiffs, because "[t]he facts overwhelming [sic] establish here hthat [sic] Rios did not sign and did not authorize delivery of the letter." ECF No. 21-1 at PAGEID # 381–82.

The Court, however, does not find Plaintiffs' evidence overwhelming, to say the least. Throughout the docket, Plaintiffs omit from their briefing many facts that would tend to show either that Ms. Rios did in fact authorize Ms. Farley to submit the letter, or that Defendant acted reasonably in giving effect to the letter as a valid withdrawal:

- Prior to its submission, Ms. Farley discussed drafting a letter withdrawing Anita Rios's candidacy with Jill Stein campaign official Rick Lass.

- The day before Ms. Farley submitted the letter, she met with the other members of the Ohio Green Party central committee, including Ms. Rios. The Committee discussed withdrawing Ms. Rios's candidacy, according to AI-generated minutes.

- While Ms. Farley was at the Defendant's office submitting the letter, she and Ms. Rios spoke on the phone.[3] Ms. Farley told Ms. Rios that she transposed Ms. Rios's signature onto a withdrawal letter and submitted it to someone at the Secretary of State's office. Ms. Farley followed up via text telling Ms. Rios that the letter was "officially submitted." Ms. Rios responded by thanking Ms. Farley.

- Before Defendant notified the Stein campaign that Defendant would not count votes cast for Stein-Rios because of the letter Ms. Farley submitted, Ms. Rios never contacted Defendant to allege the letter, which she knew had been submitted, was unauthorized. In other words, Defendant quite possibly had no reason to doubt Ms. Farley's authorization to submit the letter until *after* Defendant ordered the Boards of Election not to count Stein-Rios votes and to notify voters that such votes would not count.

Considering the above facts, were the Court to address whether Defendant correctly treated Ms. Rios's candidacy as withdrawn, it would not know where to begin. To determine whether the letter Ms. Farley submitted effected a valid withdrawal under Ohio law, should the Court ask whether Ms. Rios subjectively authorized the letter? Should the Court consider issues like apparent agency? Is Defendant's "reasonableness" (or lack thereof) in treating the letter as a withdrawal all that matters? How should the Court treat Ms. Rios's later disavowal of the letter? Can candidates withdraw their withdrawals under Ohio law? Under what circumstances? In sum, not only is it unclear whether Ms. Rios withdrew in the first instance (as a matter of fact and Ohio law), but it is also

---

[3] The sequence of events is not clear to the Court, but Ms. Rios and Ms. Farley began speaking at 10:30 a.m., and the letter was time-stamped at 10:32 a.m. This timing undercuts Ms. Rios's testimony that she learned of the letter *only after* it was submitted.

unclear whether Ms. Rios can withdraw her withdrawal. As Defendants observe, "unclear state law not only exists—it is pervasive." ECF No. 22 at PAGEID # 395.

Based on the pervasive state-law ambiguities identified above, the Court concludes that the first *Pullman* prong is satisfied.

### c. Even if Plaintiffs are correct that Defendant violated settled Ohio law, the Court may lack jurisdiction to afford Plaintiffs injunctive relief under *Pennhurst*.

A state official may violate state law and the federal Constitution with the same act, to be sure. *See Monroe v. Pape*, 365 U.S. 167, 183–85 (1961); *see also United States v. Classic*, 313 U.S. 299 (1941). In such cases, a plaintiff can pursue the federal constitutional violations in federal court under 42 U.S.C. § 1983, as Plaintiffs have done here.

That said, the Eleventh Amendment deprives federal courts of jurisdiction over suits against state officials requesting injunctive relief based on state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."); *see also id.* at 104–05, 117.

Some courts have held parties cannot avoid the Eleventh Amendment by merely disguising state-law claims as federal claims. *See, e.g., Ford v. Strange*, No. 2:13-CV-214-WKW, 2013 WL 6804191, *9 n.10 (M.D. Ala. Dec. 23, 2013)

("The disguising of state-law claims as federal-law claims would raise a *Pennhurst* problem, however."); *Jones v. Connell*, 833 F.2d 503 (3d Cir. 1987) (holding that "no federal rights were implicated" where plaintiff tried to disguise state claims as due process and equal protection claims); *Hayes v. Reed*, No. CIV.A.96-4941, 1997 WL 379179, at *2 (E.D. Pa. July 2, 1997) (rejecting plaintiffs' "disingenuous" attempts to "federalize" their state claims into Fourteenth Amendment due process claims); *cf. Ameritas Life Ins. Corp. v. Morgan*, 933 F.2d 1007 (6th Cir. 1991).

If the Sixth Circuit subscribes to the prohibition on disguised state-law claims, *Pennhurst* may pose a problem for Plaintiffs. Plaintiffs' federal theory hinges on a violation of state law. In fact, Plaintiffs' counsel stated explicitly on the record that his theory is that the Ohio Secretary of State violated the Ohio statute, and that the violation of the Ohio statute is what caused the federal violation.[4] Plaintiffs have also implicitly conceded their claims would fail if Defendant properly applied Ohio law.[5] This suggests Plaintiffs' claims may be disguised state-law claims and thereby implicate *Pennhurst*.

---

[4] Oct. 16, 2024 Hr'g Tr. 9:19–10:11 (Mr. Brown: Additionally, since we're getting into the technical details of this, the alleged withdrawal itself doesn't comply with Ohio law . . . . So the withdrawal letter from the very beginning was noncompliant and should have been ignored by the secretary's office. The Court: Okay, So I want to clarify your legal theory. Is it your theory that the secretary properly applied Ohio law but that application of the law violated your clients' rights? Mr. Brown: We do not believe the secretary properly applied Ohio law. For the reason I stated, the withdrawal was noncompliant with Ohio law in the first instance. But we do believe that the secretary is violating our First Amendment rights.").

[5] *See* Reply 2–3, ECF No. 17 ("The Secretary instead mounts a generic defense of Ohio's withdrawal statute as applied to a candidate who has in fact withdrawn – which

## 2. Resolving whether Defendant correctly applied Ohio's candidate-withdrawal law is necessary to decide Plaintiffs' First Amendment Challenge and could moot the same.

Plaintiffs dispute the second prong of the *Pullman* abstention test (resolution of the state-law issue would moot or alter Plaintiffs claims) by arguing that this case involves a First Amendment challenge, which, as a rule, Courts must not abstain from.[6] Mot. 4–6, ECF No. 21-1 (citing *Jones v. Coleman*, 848 F.3d 744 (6th Cir. 2017)). Plaintiffs misstate the rule, however.

When a case involves a First Amendment *facial* challenge to a statute and that statute is not susceptible to a limiting construction, then abstention is generally inappropriate. *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467 n.17 (1987) (collecting cases). But Plaintiffs' challenge is not a facial challenge; it is an as-applied challenge based on *Anderson-Burdick*. And Ohio's candidate-withdrawal laws are susceptible to a construction that would fundamentally alter or even moot Plaintiffs' First Amendment claims. These distinctions matter.

Abstention serves no legitimate purpose in cases involving a First Amendment facial challenge to a statute without an available limiting construction. In such cases, because the challenged statute is not susceptible to

---

Plaintiffs do not challenge – but disregards his enforcement of that statute against a candidate who did not withdraw – which Plaintiffs do challenge."); *id.* at 8 ("Plaintiffs do not assert that Ohio's candidate-withdrawal statute is unconstitutional as applied in the ordinary case, but rather that it is unconstitutional as enforced by the Secretary here, against candidates who did not withdraw.").

[6] Although Plaintiffs do not frame this argument under the second prong of the *Pullman* test, that is generally how courts analyze this kind of argument. *See, e.g., Coleman*, 848 F.3d at 752–54 (analyzing the ambiguity of the statute before turning to the import of the plaintiffs' First Amendment facial challenge).

a limiting construction, a state court interpretation of the statute could not eliminate the First Amendment issue. See *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 306–12 (1979) (holding that abstention was inappropriate for First Amendment challenges to provisions unsusceptible to a limiting construction but appropriate as to provisions that may have been susceptible to a limiting construction). In other words, this kind of facial First Amendment challenge involves no question of state law that would avoid or modify the constitutional question before the federal court—by definition. See, e.g., *Baggett v. Bullitt*, 377 U.S. 360, 375–78 (1964); *Zwickler v. Koota*, 389 U.S. 241, 248–50 (1967).

The same is not true for Plaintiffs' as-applied challenge to Defendant's action under *Anderson-Burdick*. Plaintiffs' position is that the Ohio code is unconstitutional only as applied to candidates *who have not withdrawn under Ohio law*. See, *supra*, note 5. So, unlike the First Amendment facial challenges discussed above but like many other ballot-access challenges,[7] Plaintiffs' challenge turns on the resolution of an unresolved issue of state law: whether Defendant correctly applied Ohio Rev. Code § 3513.30(D). The pivotal impact of

---

[7] See, e.g., *Barr v. Galvin*, 626 F.3d 99 (1st Cir. 2010) (remanding with instructions to abstain from a void-for-vagueness challenge to a candidate-substitution statute); *Wise v. Circosta*, 978 F.3d 93 (4th Cir. 2020) (finding that *Pullman* abstention doctrine counsels against the exercise of jurisdiction); *Moore v. Hosemann*, 591 F.3d 741 (5th Cir. 2009) (remanding with instructions to abstain from a challenge to the Mississippi Secretary of State's decision to leave the Socialist and Natural Law Party candidate off the presidential ballot).

this issue follows from the *Anderson-Burdick* standard. Under *Anderson-Burdick*, courts weigh the burden imposed by a ballot-access law against the State's regulatory interest in enforcing that law. The strength of the State's interest here depends on whether the Defendant properly enforced Ohio's ballot-access laws. Either Defendant correctly applied Ohio law and the State's regulatory interest in not counting votes for withdrawn candidates is substantial,[8] or Defendant misapplied Ohio law and the state's regulatory interest in not counting votes for existing candidates is negligible. Deciding which of these two disjuncts is true is therefore critical to adjudicating Plaintiff's First Amendment claim. And that decision belongs to an Ohio state court—not this federal court.

For all the above reasons, the Court does not find Plaintiffs are likely to succeed on the merits of their appeal of the abstention and stay Order. The Court next turns to Plaintiffs' request for a preliminary injunction pending appeal.

**B.     The Court Did Not Err in Refusing Plaintiffs Injunctive Relief.**

**1.     *Jones v. Coleman* is not on point.**

Plaintiffs base their request injunctive relief pending appeal primarily on *Jones v. Coleman*, 848 F.3d 744 (2017).[9] *See* Mot. 4–5, ECF No. 21-1.

---

[8] Which, as noted above, Plaintiffs effectively concede. *See, supra,* note 5.
[9] *Coleman* is also distinguishable from this case. *Coleman* reversed a district court's abstention order because neither of the *Pullman* prongs was met: "it [was] far from guaranteed that the resolution of [the underlying state administrative proceeding] w[ould] correspondingly resolve any unclear issues of state law that might eliminate the federal constitutional questions in the [federal] case" and the challenged state statute was not ambiguous. 848 F.3d at 752. The Court reaches the opposite conclusion for both prongs here.

Plaintiffs assert that *Coleman* makes preliminary relief "virtually mandatory" when a court abstains in a First Amendment case.

The Court disagrees with Plaintiffs' interpretation of *Coleman*. Granted, *Coleman* does state, "when the plaintiff has requested preliminary injunctive relief, a district court ought ordinarily to grant it when it abstains." *Coleman*, 848 F.3d at 754. But this line from *Coleman* is dicta: the Sixth Circuit held that the district court should not have abstained. *Id.* at 747. Coleman therefore did not involve a request like Plaintiffs', and its statement that such relief "ought to be granted" is not binding.

More troubling, the case *Coleman* cites for the bold proposition that injunctive relief must accompany abstention—*Daniel v. Waters*, 515 F.2d 485, 492 (6th Cir. 1975)[10]—simply does not stand for that proposition. Instead, in *Waters*, the Sixth Circuit held that a district court should not have abstained from the plaintiffs' facial First and Fourteenth Amendment challenges to a Tennessee statute, concluded that the plaintiffs' succeeded on their facial challenges to the statute, and therefore vacated the district court's abstention order with directions to enter a preliminary injunction for the successful plaintiffs. *Id.* at 489 ("We believe that in several respects the statute under consideration is unconstitutional on its face, that no state court interpretation can save it, and that in this case, the

---

[10] The challenged state statute in *Waters* was not capable of any interpretation by the state court that could have affected the federal analysis. 515 F.2d at 491–92 ("We deem the two constitutional violations described above to be patent and obvious on the face of the statute and impossible for any state interpretation to cure.").

District Court clearly erred in abstaining from rendering a determination of the unconstitutionality of the statute on its face."). The directive that the district court enter injunctive relief flowed from the Circuit's merits conclusion that the *Waters* plaintiffs won on their facial challenge to the Tennessee statute. *Coleman*'s dicta interpretation of *Waters* as requiring a court to grant injunctive relief any time it abstains is accordingly not persuasive.

Nor would that interpretation make sense. It would mean that a district court must grant a plaintiff's requested preliminary injunctive relief—even when that plaintiff would fail on the merits of her claim—simply because the district court abstained from considering that meritless claim. No case cites *Coleman* or *Waters* for this proposition. It cannot be the law of the Circuit.[11]

### 2. The *Purcell* principle precludes injunctive relief.

Under *Purcell*, federal courts should avoid entering an injunction close in time to an election when doing so would "subject the public to a serious risk of voter confusion." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006)); *see also Kennedy v. Benson*, No. 24-1799, 2024 WL 4501252, at *5 (6th Cir. Oct. 16, 2024) (Clay, J., concurring in the denial of rehearing en banc); *id.* at *6 (Griffin, J., concurring in the denial of rehearing en banc); *Democratic Nat'l*

---

[11] *See, e.g., Forest Hills Util. Co. v. City of Heath*, 539 F.2d 592 (6th Cir. 1976) (affirming in part a district court's decision to abstain without granting preliminary injunctive relief); *Libertas Classical Assoc. v. Whitmer*, No. 20-2085, 2020 WL 6886262, at *2-3 (6th Cir. 2020) (denying motion for injunctive relief pending appeal where a lower court abstained under *Pullman*); *see also Caldara v. City of Boulder*, 955 F.3d 1175, 1182–83 (10th Cir. 2020), *cert. denied* 141 S. Ct. 849 (2020) (affirming a district court's decision to abstaining under *Pullman* without granting preliminary injunction).

*Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring) ("Even seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences.").

The Court can hardly imagine a case where an injunction would pose a higher risk of voter confusion. Defendant represents that "1.1 million absentee ballots have been mailed, and just under 700,000 Ohioans have voted in person" as of October 24, 2024. ECF No. 22 at PAGEID # 394. Defendant also avers that "[e]very ballot mailed to Ohio voters in the 2024 general election contained a printed notice stating that votes for the Stein-Rios ticket will not be counted. Boards also printed and posted this same notice at their offices to advise in-person voters." *Id.* This means hundreds of thousands of Ohioans already voted expecting that a vote for Stein-Rios would not count. Defendants conjecture at the chaos that would ensue from reversing course now. *Id.* Hoping to keep this chaos conjectural, the Court denies Plaintiffs' request for injunctive relief pending appeal.

### III. CONCLUSION

Plaintiffs' Motion for a stay of a stay and preliminary injunction pending appeal is **DENIED**. The Clerk shall terminate ECF No. 21 as a pending motion.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT